UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN SURABIAN, and STEVEN
SURABIAN TRUSTEE FOR THE
RICHARD SURABIAN IRREVOCABLE
TRUST,

    Plaintiffs,

v.

HSBC BANK USA, NA as TRUSTEE FOR
SEQUOIA MORTGAGE TRUST 2004-6,

    Defendant.

Civ. No. 1:11-cv-10053-DPW

### AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (LEAVE TO FILE GRANTED ON APRIL 13, 2011)

The defendant, HSBC Bank USA, NA as Trustee for Sequoia Mortgage Trust 2004-6 ("HSBC"), hereby submits the following Memorandum of Law in Support of its Motion to Dismiss plaintiffs' complaint.

By this action, plaintiffs allege that HSBC unlawfully foreclosed on the property located at 85 Pond Street in South Yarmouth, Massachusetts and that they suffered "loss of personal property", "loss of rent" and "emotional distress" as a result. Dismissal of plaintiffs' complaint is appropriate pursuant to Fed. R. Civ. Pro. 12(b)(6) because none of plaintiffs' allegations state a claim upon which relief may be granted.

Plaintiffs' claim that the foreclosure was unlawful fails because he makes no other allegation in support of this claim other than that "there was no mortgage". Such unsupported and conclusory statements are insufficient to defeat a motion to dismiss under the Rule 12(b)(6)

standard set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In a related vein, plaintiffs' "loss of personal property" claim must also be dismissed because there is no allegation that HSBC caused the plaintiffs' alleged loss of personal property and is further contradicted by the allegations in plaintiffs' own complaint. As to plaintiffs' "loss of rent" claim, this claim fails because they had no ownership stake in the property (and thus no entitlement to rental income) for the time period that they seek to recover rent payments. Finally, plaintiffs' emotional distress claim must be dismissed because courts have made abundantly clear that Steven Surabian's supposed cause of the emotional distress here – a bank's exercise of its right to foreclose after the borrower's default – does not constitute the extreme and outrageous conduct needed to establish an emotional distress claim.

In addition to the foregoing, all claims brought on behalf of the Richard Surabian Irrevocable Trust must be dismissed as the Trust has no ownership interest in 85 Pond Street.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' verified complaint was removed to this court on January 10, 2011 (the "Complaint"). See DE# 1.

On April 23, 2004, Steven Surabian and his daughter, Stephanie Surabian, executed a promissory note in the original principal amount of $201,750.00 payable to GreenPoint Mortgage Funding, Inc. (the "Note"). See Promissory Note, attached as Exhibit D to the Complaint, appended to this Motion as Exhibit 1; Exhibit 1 at ¶ 1. To secure the Note, Steven and Stephanie Surabian granted a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") (the "Mortgage") for the property located at 85 Pond Street in South Yarmouth, Massachusetts (the "Property"). See Mortgage, Exhibit 1 at Exhibit E, appended thereto.

On May 19, 2006, the Surabians conveyed the Property to Steven Surabian, individually. Exhibit 1 at ¶¶ 1-2.

By Assignment of Mortgage dated December 21, 2009, MERS assigned the Mortgage to HSBC. Id. at ¶ 4; Assignment of Mortgage, attached as Exhibit C to the Complaint. HSBC thereafter initiated foreclosure proceedings on the Property and a foreclosure deed was recorded on June 7, 2010. Id. at ¶ 20. Approximately three weeks later, on June 28, 2010, Steven Surabian attempted to transfer 85 Pond Street into the Richard Surabian Irrevocable Trust. Id. at ¶ 3.

Plaintiffs allege: (1) that HSBC wrongfully foreclosed on the Property; (2) a claim for "loss of personal property" for property reportedly stolen from the Property; (3) that HSBC is liable for plaintiffs' tenant's failure to pay rent; and (4) that Steven Surabian suffered emotional distress. See Id., *generally*.[1]

The plaintiffs' only allegation in support of why HSBC's foreclosure was "unlawful" appears to be that "there was no Mortgage". See Id. at ¶ 6.

In support of the "loss of personal property" claim, the Complaint alleges as follows:

> 31. On or about July 28, 2010, the Plaintiff noticed the door to the garage with their property was left unlocked then Plaintiffs noticed over $8,000.00 of their property missing.
>
> 32. Defendant admits to their agent secured (sic) the property on July 27, 2010 and changed the locks.

Exhibit 1 at ¶¶ 31-32. This is contradicted by plaintiffs' own allegations that a former tenant (and not HSBC) had changed the locks on July 28, 2010 and again by plaintiffs' allegation that the "locks were changed July 22, 2010" (and not on July 27, 2010). Id. at ¶¶ 27, 28.

---

[1] While only some of the plaintiffs' counts in the Complaint are explicitly set forth, the causes of action appear to be captioned as: "unlawful foreclosure", "loss of personal property", "loss of rent" and "emotional distress". See Id. *generally*.

As to the "loss of rent" claim, plaintiffs assert that they are entitled to rental income of $2,600.00 that they did not receive because of HSBC's eviction of the tenant residing at 85 Pond Street. Id. at ¶¶ 24-25, 29. After the foreclosure proceedings began, HSBC allegedly "harassed" the tenant residing at 85 Pond Street into not paying rent, forcing Steven Surabian to send a 30-day Notice to Quit on July 16, 2010. Id. at ¶ 24. The tenant was evicted and forced to quit on or about July 22, 2010. Id. at ¶ 27.

Finally, with regard to the emotional distress claim, the plaintiffs assert that the emotional distress stems from HSBC's foreclosure of 85 Pond Street and Mr. Surabian's participation in lawsuits arising therefrom. Id. at ¶¶ 33-44.

## ARGUMENT

I. **Plaintiffs' complaint should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6) as it fails to state a claim upon which relief may be granted.**

The plaintiffs allege that HSBC's foreclosure was "unlawful" for no stated reason other than that "there was no Mortgage". Exhibit 1 at ¶ 6. Most significantly, this allegation is simply incorrect. The assignment of the Mortgage, which is appended to plaintiffs' own Complaint, specifically sets forth that the Mortgage, recorded with the Barnstable County Registry of Deed at Book 18489, Page 333, was assigned from MERS, the original mortgagee, to HSBC, on December 21, 2009. See Assignment of Mortgage, attached as Exhibit C to the Complaint. HSBC accordingly has valid rights under the Mortgage and had standing to institute the foreclosure proceedings that it did. See U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637 (2011). Further, this bald, unsupported assertion is insufficient to survive a Rule 12(b)(6) motion. In making their allegations, the plaintiffs possess an "obligation to provide the grounds of [his] entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008); see also Flomenbaum v. Commonwealth, 451

Mass. 740, 751 n.12 (2008) (noting that recent changes to motion to dismiss standard impose "stricter" requirements on plaintiffs than previous standard). This obligation "requires more than labels and conclusions." Twombly, 550 U.S. at 555. It requires factual allegations that "raise a right to relief above the speculative level." Iannacchino, 451 Mass. at 636. Additionally, Surabian's status as a *pro se* litigant does not relieve him of the obligation to comply with the Rules of Civil Procedure. Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 50 n.1 (1st Cir. 2003). Plaintiffs' unsupported allegation, even aside from the fact it is wholly untrue, is insufficient to survive a Rule 12(b)(6) motion. Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (noting that on a motion to dismiss, a court should "reject unsupported conclusions or interpretations of law").

Plaintiffs' claim for "loss of personal property" fails because nowhere in the Complaint is it alleged that HSBC committed the destruction of plaintiffs' personal property or that HSBC is otherwise responsible for the damage caused. Further, the "loss of personal property" claim is contradicted by conflicting and inconsistent allegations contained in the plaintiffs' own Complaint. Specifically, Count III of the complaint, titled, "Plaintiffs (sic) Verified Complaint for Loss of Property," sets forth as follows:

> 31. On or about July 28, 2010, the Plaintiff noticed the door to the garage with their property was left unlocked then Plaintiffs noticed over $8,000.00 of their property missing.
>
> 32. Defendant admits to their agent secured (sic) the property on July 27, 2010 and changed the locks.

Exhibit 1 at ¶¶ 31-32.

First, nothing in Count III, or any other allegation contained in the Complaint, actually alleges that HSBC committed the destruction of plaintiffs' property or that HSBC had any responsibility to secure the plaintiffs' property after it had foreclosed and taken possession of 85

Pond Street. In addition, Count III is contradicted by plaintiffs' allegations elsewhere in the Complaint. For example, paragraph 28 of the Complaint alleges that on July 28, 2010, the plaintiffs' former tenant (and not HSBC) changed the locks and left the door to the garage unlocked. In paragraph 27, the Complaint alleges that the locks were changed on July 22, 2010 (and not July 27, 2010). Such contradictory and conflicting allegations cannot withstand a motion to dismiss. Nationwide Mut. Ins. Co. v. Morning Sun Bus. Co., 2011 WL 381612, *6 (E.D. N.Y.) ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (citation omitted) (a copy of this opinion is attached hereto as Exhibit 2); Air Sunshine, Inc. v. Carl, 2010 WL 4861457, *2 (D. P.R.) ("In the context of a motion to dismiss, courts look to only well-pled allegations that are plausible on their face; therefore, [] contradictory allegations [are to be] ignored by the court for purposes of [a Rule 12(b)(6)] motion.") (a copy of this opinion is attached hereto as Exhibit 3); See also Watkins v. Omni Life Science, Inc., 692 F. Supp. 170, 178 (D. Mass.) (contradictory affidavits attached to complaint insufficient to survive a Rule 12(b)(6) motion). Plaintiffs' claim for "loss of personal property" must accordingly be dismissed.

Plaintiffs' claim relating to the alleged loss of rental income must also fail as the plaintiffs did not have an ownership interest in the property for the time period for which they are claiming rental payments. According to the Complaint, the foreclosure occurred on May 7, 2010 and was recorded on June 7, 2010. Exhibit 1 at ¶ 20. The Complaint sets forth that the tenant paid monthly rent of $1,300.00 and the tenant quit the premises on or about July 22, 2010. Id. at ¶ 27. The plaintiffs seek $2,600.00 for two months of back rent. Id. at 29. Plaintiffs'

entitlement to rent, however, ceased when their ownership interest ceased on May 7, 2010. Any claim for rent payments after May 7, 2010 must be dismissed.

Finally, the claim for emotional distress cannot survive either. Emotional distress claims require, among other things, the defendant to have acted intentionally and in a manner "extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community." Aguoji v. Harvard University, 77 Mass. App. Ct. 1115 (2010). A bank's exercise of its right to foreclose after the borrower's default does not constitute extreme and outrageous conduct needed for establish an emotional distress claim as a matter of law. In In re Fernandes, No. 10-17925-FJB, 2011 WL 322017 (Bankr. D. Mass. Jan. 31, 2011) (Bailey, J.) (a copy of this case is attached as Exhibit 7), the United States Bankruptcy Court for the District of Massachusetts, applying Massachusetts law, dismissed a claim for intentional infliction of emotional distress based on a bank's actions to foreclose. The Court found that, as a matter of law, the bank's exercise of "what it believed was its right to foreclose in the face of protestations to the contrary by the mortgagor...cannot constitute the 'extreme and outrageous conduct' that is a required element of this tort." Id. at *3. Similarly, in Davenport v. Litton Loan Servicing, LP, 2010 WL 3218592 (N.D. Ca. 2010) (a copy of this case is attached as Exhibit 8), the borrower asserted a claim for intentional infliction of emotional distress against her mortgage servicing company premised on her allegation that the servicer foreclosed with considering her request for a loan modification. In granting the servicer's motion to dismiss, the Court ruled:

> Common sense dictates that home foreclosure is a terrible event and likely to be fraught with unique emotions and angst. Where a lending party in good faith asserts its right to foreclose according to contract, however, its conduct falls shy of "outrageous," however wrenching the effects on the borrower. . . .

Id. at *16; see also Lachenmaier v. First Bank Systems. Inc., 246 Mont. 26, 35 (1990) ("the Bank in this case connect be said to have acted 'beyond all possible bounds of decency' where it

merely exercised a legal right to foreclose on the mortgage and notes. 'The actor is never liable...when he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.'") (quoting Restatement 2d of Torts, § 46, comment g); Weiler v. United Sav. Ass'n of Texas, 887 S.W.2d 155, 159 (Tex. App. Ct. 1994) ("Clearly, a foreclosure sale that complies with the terms of the loan agreements and applicable law would not justify a claim for intentional infliction of emotional distress. Even if the creditor's conduct is extreme and outrageous, he does not commit the tort if he does not more than insist on his legal rights in a permissible way."); East River Sav. Bank v. Steele, 169 Ga. App. Ct. 9, 10 (1983) (alleged wrongful foreclosure does not constitute intentional infliction of emotional distress). For these reasons, the plaintiffs' emotional distress claim must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

II. Steven Surabian, as trustee for the Richard Surabian Irrevocable Trust, does not have standing to bring this lawsuit.

As noted above, HSBC foreclosed on the Property on May 7, 2010. Exhibit 1 at ¶ 20. The foreclosure deed was recorded on June 7, 2010. Id. Steven Surabian did not attempt to transfer the Property into the Richard Surabian Irrevocable Trust until June 28, 2010 – 21 days after the foreclosure deed was recorded. Id. at ¶ 3. The Richard Surabian Irrevocable Trust has no ownership stake in the Property and thus the Trust has no standing to bring this complaint.

## CONCLUSION

WHEREFORE, HSBC Bank USA, NA as Trustee for Sequoia Mortgage Trust 2004-6 respectfully requests that the plaintiffs' complaint be dismissed.

HSBC BANK USA, NA, as TRUSTEE OF THE
SEQUOIA MORTGAGE TRUST 2004-6,
By its attorneys,

_/s/ Young B. Han_
Richard E. Briansky, BBO# 632709
rbriansky@princelobel.com
Young B. Han, BBO# 664126
yhan@princelobel.com
**PRINCE, LOBEL, GLOVSKY & TYE LLP**
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel: 617.456.8000

## CERTIFICATE OF SERVICE

I, Young B. Han, certify that a true and accurate copy of the foregoing document was filed through the Court's ECF system this 12th day of April, 2011. I further certify that a true and accurate copy of the foregoing document was sent by first class mail, postage prepaid to the plaintiff at the following address:

Steven Surabian
1230 Rt. 28
South Yarmouth, MA 02664

Steven Surabian, Trustee for the
Richard Surabian Irrevocable Trust
P.O. Box 397
West Hyannisport, MA 02672

_/s/ Young B. Han_
Young B. Han