UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN SURABIAN, and STEVEN SURABIAN )
TRUSTEE FOR THE RICHARD SURABIAN )
IRREVOCABLE TRUST, )
 )
                 Plaintiffs, )
 ) CIVIL ACTION NO.
v. ) 11-10053-DPW
 )
HSBC BANK USA, NA as TRUSTEE FOR )
SEQUOIA MORTGAGE TRUST 2004-6 )
 )
                 Defendant. )

MEMORANDUM AND ORDER
March 26, 2012

Plaintiffs, Steven Surabian and Steven Surabian as Trustee for the Richard Surabian Irrevocable Trust, brought this action against Defendant HSBC Bank USA, NA, as Trustee for Sequoia Mortgage Trust 2004-6 ("HSBC") alleging wrongful foreclosure, loss of personal property, loss of rent, and emotional distress. HSBC has moved to dismiss the Complaint.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc).

**I.**

**Count I** of the Complaint alleges that HSBC wrongfully foreclosed on the property at 85 Pond Street, South Yarmouth, MA, after Steven Surabian repeatedly informed Defendant that there was no mortgage on the property. The Complaint does not address the mortgage that was recorded on the property at the Registry of Deeds in 2004, on the last page of which the signatures "Steven Surabian" and "Stephanie LaFlash Surabian" appear. In their narrative opposition to HSBC's motion to dismiss, Plaintiffs raise for the first time the contention, not supported by an amended pleading, that the mortgage and note were forged.

In a previous complaint filed in *Surabian v. HSBC Bank USA, NA*, No. 10-10643-RZW (D. Mass. filed Apr. 16, 2010), regarding the property at 85 Pond Street, Plaintiffs also claimed that the foreclosure was wrongful. They alleged that the mortgage did not have a notary seal on every page and that the note was signed by Steven Surabian alone and "can not be anything Steven Surabian signed." In later submissions, Plaintiffs claimed that the documents were fraudulent but did not raise the forgery contention. The case was dismissed without prejudice by Judge Zobel and the First Circuit dismissed the appeal for lack of jurisdiction after Plaintiffs filed the case now before me. *See Surabian v. HSBC Bank USA, NA*, No. 10-2400 (1st. Cir. April 28, 2011).

Surabian presented similar allegations before Judge Gertner regarding yet another property in *Surabian v. Residential Funding Co., LLC.*, No. 10-10546-NG (D. Mass. filed Apr. 1, 2010). In *Residential Funding Co.*, Surabian and his brother brought a state court action to prevent a foreclosure. Count I of the complaint in *Residential Funding Co.* was almost identical to Count I of the complaint in the previous iteration of this case dismissed by Judge Zobel. Plaintiffs claimed that the foreclosure was wrongful on the grounds that the note and mortgage did not have a notary seal on every page and the note "can not be anything Steven Surabian or Richard Surabian signed."

*Residential Funding Co.* was removed to federal court and subsequently dismissed by Judge Gertner. The First Circuit upheld the dismissal, stating:

> [I]n their more recent filings, [Plaintiffs] have expanded on their allegations to assert that the note and mortgage were fraudulent documents that were never executed and that Steven Surabian's signatures, both notarized and otherwise, were forged. These revised allegations, which are at some odds with plaintiffs' earlier contentions, simply lack "facial plausibility."

*Surabian v. Residential Funding Co.*, No. 11-1212, slip op. at 2. (1st Cir. Sept. 28, 2011), *petition for cert. filed* (U.S. March 12, 2012) (No. 11-9337).

In all three cases, Surabian initially made allegations of wrongful foreclosure in the pleadings but did not specify forgery. In both this case and *Residential Funding Co.*, the

3

suggestion of forgery was first introduced in unsworn briefing. A complaint cannot be amended in that fashion. Following the First Circuit's approach in *Residential Funding Co.*, I hold that Plaintiffs' allegations lack facial plausibility, and will therefore dismiss Count I.

## II.

**Count II** of the Complaint alleges that foreclosure and HSBC's harassment of Plaintiffs' tenant after foreclosure caused the tenant to stop paying rent to Plaintiff. Count II is dependent on the survival of the challenge to foreclosure in Count I. Because Count I is insufficient to survive a motion to dismiss, Count II will be dismissed as well.

## III.

**Count III** alleges that Plaintiffs' property was missing from the garage after HSBC's agent secured the property and changed the locks. This "loss of personal property" claim presents some inconsistent pleading. The Complaint alleges that "[o]n or about July 28, 2010 the Plaintiff noticed that [the tenant] Ms. Hunter had moved and changed the locks and had left the door to the Garage unlocked . . . ." Compl. ¶ 28. This appears to contradict Plaintiffs' allegations in Count III that HSBC, and not Ms. Hunter, is somehow responsible.

In their narrative response to the motion to dismiss, Plaintiffs contend that there is no contradiction in the

Complaint, explaining that, while originally Surabian thought that Ms. Hunter had changed the locks, later HSBC admitted that his agent had done so. That clarification is not included in the pleadings, however. In any event, a contradiction within a complaint does not necessarily provide grounds for dismissal. The First Circuit has held, albeit prior to *Iqbal*, that "inconsistent pleading does not deprive the pleader of the right to have the complaint read, as between the inconsistencies, in the manner that supports the adequacy of the pleading." *In re Stone v. Webster, Inc., Securities Litigation*, 414 F.3d 187, 200 (1st Cir. 2005). An effort to read the Complaint in the instant case in such a manner, however, does not provide a basis for concluding that the Complaint before me states a plausible claim for relief.

It stretches plausibility to find that because the Complaint alleges that HSBC's "agent secured the property on July 27, 2010 and changed the locks," Compl. ¶ 32, and that on July 28, 2010, "the Plaintiff noticed the door to the garage . . . was left unlocked" and "then Plaintiffs noticed over $8,000.00 of their property missing," Compl. ¶ 31, HSBC is responsible for the loss. It would embrace the logical fallacy *post hoc ergo propter hoc* to infer that even if HSBC's agent left the garage door unlocked or otherwise inadequately secured the garage those acts led to a loss for which HSBC is responsible without at a minimum alleging

that Plaintiffs' property was inside when the garage was secured either by HSBC or by Ms. Hunter on July 28. Because the Complaint does not allege sufficient facts plausibly to state a claim for relief, I will dismiss Count III.

**IV.**

**Count IV** of the Complaint alleges infliction of emotional distress. While the Count does not make explicit whether it is negligent or intentional infliction of emotional distress that is alleged, the Complaint makes no mention of physical harm manifested by objective symptoms. I therefore conclude that Count IV refers to intentional infliction of emotional distress, which does not require a demonstration of physical harm. *Compare Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E. 1189, 1197 (Mass. 1997) (listing the elements of intentional infliction of emotional distress, not including physical harm), *with Payton v. Abbott Labs*, 437 N.E.2d 171, 181 (Mass. 1982) (listing the elements of negligent infliction of emotional distress, including physical harm).

To prevail on a claim of intentional infliction of emotional distress, "the plaintiffs must establish: (1) that the defendant intended to inflict emotional distress, and knew or should have known that emotional distress was the likely result of his conduct, but also (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly

6

intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." *Tetrault*, 681 N.E. at 1197 (internal citation omitted).

I need not decide whether HSBC's alleged conduct could, somewhat implausibly, be "extreme and outrageous" because Plaintiffs' claim for intentional infliction of emotional distress fails for more basic reasons. Plaintiffs do not allege that they suffered emotional distress (and certainly do not allege that they suffered particularly severe emotional distress). Moreover, Plaintiffs do not allege that HSBC intended to cause such distress. Consequently, Plaintiffs fail to allege adequately the elements necessary to support a claim for intentional infliction of emotional distress under Massachusetts law. I therefore will grant HSBC's motion to dismiss Count IV of the Complaint.

## V.

The Plaintiffs, who have had several lessons from several judges in this Court and in the Court of Appeals about their duty to allege plausible claims in their pleadings continue here to view their allegations as infinitely mutable. They attempt to avoid their pleading responsibilities by offering implausible and

7

unpled factual contentions in their briefing and to request the court make leaps of logic.  Unless pleading responsibilities are to lose all rigor, this approach must be rejected.  Accordingly, I GRANT Defendant's motion to dismiss (Dkt. No. 18).


                                                          **/s/ Douglas P. Woodlock**
                                                          DOUGLAS P. WOODLOCK
                                                          UNITED STATES DISTRICT JUDGE